

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO. 1:08-CR-43(3)** |
| | § | |
| **JUVENAL CRUZ VILLEGAS** | § | |

### FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA BEFORE THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this matter to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3). *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On August 26, 2008, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the Defendant, on **Count 1** of the charging **Information** filed in this cause. Count 1 of the Information charges that from on or about February 1, 2008, and continuing thereafter to and including March 26, 2008, in the Eastern District of Texas, and elsewhere, Juvenal Cruz Villegas, Defendant herein, and others both known and unknown, did

knowingly and intentionally conspire to knowingly and intentionally distribute and possess with intent to distribute a Schedule II controlled substance, namely, cocaine, in an amount of five hundred (500) grams or more, but less than (5) kilograms, in violation of Title 21, United States Code, Section 841, all in violation of Title 21, United States Code, Section 846.

Defendant, Juvenal Cruz Villegas, entered a plea of guilty to Count 1 of the Information[1] into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a. That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b. That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

c. That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea. Upon addressing the Defendant personally in open court, the Court determines that Defendant's plea is voluntary and did not result from force, threats or promises. *See* FED. R. CRIM. P. 11(b)(2).

---

[1] The Defendant executed a Waiver of Indictment which has been filed in the record of this cause and was addressed at the guilty plea hearing.

      d.      That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that his conduct falls within the definition of the crime charged under 21 U.S.C. § 846.

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the Government presented the following evidence, which was admitted into the record at the plea hearing.  *See Factual Basis and Stipulation*.  If the case proceeded to trial, the Government and Defendant agreed and stipulated to the information set forth in the factual basis which would be used by the Government in support of the Defendant's plea of guilty.  The Government and Defendant agreed that the Government would have proven that Defendant is one and the same with the person charged in the Information and that the events described in the Information occurred on the dates as alleged in the Eastern District of Texas.  The Government and Defendant agreed that the Government would have proven, through the testimony of witnesses and through admissible exhibits, beyond a reasonable doubt, each and every essential element of the offense alleged; specifically, the Government would have proven certain stipulated facts set forth in the *Factual Basis,* on file in the record of this cause.  The *Factual Basis* states those facts as follows:

A cooperating witness (CW) would testify that beginning in mid-February 2008, he worked at the direction of Drug Enforcement Administration Special Agent (SA) David Lambert, investigating the cocaine trafficking activities of Elias Medrano Nunez.  The CW would testify that his cover story in dealing with Elias Nunez was to acquire one kilogram of

cocaine as a sample for a "buyer" from Louisiana.  The CW would testify that he told Elias Nunez that if the one kilogram sample was of good quality, the Louisiana buyer would be interested in purchasing greater quantities of cocaine.  The CW would testify that on February 25, 2008, he went to an auto shop operated by Elias Nunez in Houston and purchased one kilogram of cocaine from Elias Nunez for $17,800.  The CW would testify that he utilized money provided by SA Lambert and that after the purchase was complete, he turned the cocaine over to SA Lambert.  The CW would testify that following the February 25, 2008 purchase, he made a series of recorded telephone calls to Elias Nunez to discuss a meeting with the a man known as "Tony" - the purported cocaine customer from Louisiana.  The CW would testify that Elias Nunez agreed to meet "Tony" in Beaumont on March 19, 2008, so that Elias Nunez could see that "Tony" had the money to make a large cocaine purchase.  On March 19, 2008, the CW accompanied Elias Nunez to Beaumont, where he introduced Elias Nunez to "Tony".  During this meeting, "Tony" (undercover Houston Police Detective Fernando Villasana) showed Elias Nunez approximately $100,000 in U.S. currency.  After seeing "Tony's" money, the CW would testify that he assisted Elias Nunez in removing three kilograms of cocaine that had been placed inside the rear driver side door in Nunez' vehicle.  The CW would further testify that after showing "Tony" the cocaine, he and Nunez placed the cocaine back inside the door panel and departed for Houston before being stopped by Beaumont Police officers.  The CW would testify about further communications between himself and Elias Nunez and would testify that he arranged a meeting between "Tony" and Elias Nunez on March 26, 2008 at a restaurant in Houston.

Detective Fernando Villasana of the Houston Police Department would testify that in February and March of 2008, he assisted Special Agent David Lambert of the Drug Enforcement Administration (DEA). Det. Villasana would testify that worked on this investigation in an undercover capacity posing as "Tony", a cocaine trafficker from Louisiana, seeking to purchase multi-kilogram quantities of cocaine. Det. Villasana would testify that in the course of the investigation, he was introduced to Elias Nunez by a CW working under the direction of SA Lambert. Det. Villasana would testify that on March 19, 2008, he met Elias Nunez and the CW in Beaumont and displayed $100,000 in currency to Elias Nunez.

Det. Villasana would testify that once Elias Nunez observed the money, Elias Nunez showed him three kilograms of cocaine and offered to sell them to him. Det. Villasana would testify that he told Elias Nunez that he was interested in purchasing a greater quantity and that he (Elias Nunez) should call him when he had the total amount ready for sale. Finally, Det. Villasana would testify that following a series of telephone calls, he met Elias Nunez in the parking lot of the Don Carlos Restaurant in Houston on March 26, 2008 to purchase cocaine. Det. Villasana would testify that Elias Nunez advised that he had "four," but could get more. Det. Villasana would testify that at that time, Elias Nunez went inside the restaurant where he (Nunez) met with two other men, later identified as Juvenal Cruz Villegas and Eleazar Bustos Maldonado. Det. Villasana would testify that after a brief time, Elias Nunez, Juvenal Cruz Villegas and Eleazar Bustos Maldonado exited the restaurant and invited him to join them in a vehicle. Det. Villasana would testify that once inside the vehicle, he was handed a box by Juvenal Cruz Villegas. Det. Villasana would testify that he looked inside the box and observed

one kilogram of cocaine. Det. Villasana would testify that when he inquired about the other "three", Juvenal Cruz Villegas patted the dashboard and stated that "the rest are right here." Det. Villasana would further testify that as he was examining the one kilogram inside the box, Eleazar Bustos Maldonado assured him that the other three were of the same quality. Det. Villasana would testify that he gave a pre-arranged signal and Agents moved in to arrest Elias Medrano Nunez, Juvenal Cruz Villegas, and Eleazar Bustos Maldonado.

Officer Michael McBride of the Beaumont Police Department would testify that on March 19, 2008, at the request of DEA SA David Lambert, he conducted a traffic stop of a green Honda on Interstate 10 westbound in Beaumont, Texas. Officer McBride would testify that after identifying the driver as Elias Medrano Nunez, he obtained a voluntary consent to search the vehicle from Nunez. Officer McBride would testify that he located and seized three kilograms of suspected cocaine from inside the rear driver side door and turned the suspects and cocaine over to DEA.

Special Agent David Lambert of the Drug Enforcement Administration (DEA) would testify that he supervised all aspects of the CW's participation in his investigation of the cocaine trafficking activities of Elias Medrano Nunez. SA Lambert would further testify that on March 19, 2008, DEA conducted a video surveillance of the auto shop operated by Elias and Mario in Houston. SA Lambert would testify that during this surveillance, he observed Mario Medrano Nunez remove the interior rear drivers side door panel from a green Honda. SA Lambert would further testify that he observed Mario Medrano Nunez place a small package inside the door and replace the door panel. SA Lambert would testify this was the same car driven to Beaumont on

6

March 19, 2008 by Elias Medrano Nunez. As to the events of March 19, 2008, SA Lambert would testify that he received three kilograms of suspected cocaine from Officer M. McBride after the traffic stop conducted at his request. SA Lambert would testify that on March 19, 2008, Elias Medrano Nunez denied any knowledge of the cocaine removed from his vehicle. SA Lambert would testify regarding the arrest of Elias Medrano Nunez, Juvenal Cruz Villegas and Eleazar Bustos Maldonado on March 26, 2008, and the removal of four kilograms of cocaine from the vehicle occupied by Det. Villasana and the three defendants. SA Lambert would testify that he submitted a total of eight kilograms of suspected cocaine seized during the course of the investigation to the Harris County Crime Laboratory for analysis.

A Forensic Analyst with the Harris County Crime Lab would testify as to the forensic analysis of the evidence submitted by SA Lambert. The witness would testify about his/her professional qualifications. The witness would further testify that he/she analyzed the evidence submitted by Special Agent Lambert in this matter and determined it to be cocaine, a Schedule II controlled substance, in an amount of 8 kilograms.

Finally, the parties stipulate that based on the evidence held by the Government, the involvement of Defendant Juvenal Cruz Villegas in the conspiracy began on March 26, 2008, and is limited to the four kilograms of cocaine seized by the DEA on that date.

Defendant, Juvenal Cruz Villegas, agreed with the facts set forth by the Government and signed the *Factual Basis.* Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty. The Defendant agreed with the evidence presented by the Government and personally testified that he was entering his guilty


plea knowingly, freely and voluntarily.

## **RECOMMENDED DISPOSITION**

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offense charged in **Count 1** of the charging **Information** on file in this criminal proceeding. The Court also recommends that the District Court conditionally accept the plea agreement.[2] Accordingly, it is further recommended that, Defendant, Juvenal Cruz Villegas, be finally adjudged as guilty of the charged offense under Title 21, United States Code, Section 846.

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report. At the plea hearing, the Court admonished the Defendant that the District Court may reject his plea and that the District Court can decline to sentence Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the

---

[2] "(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

presentence report because the sentencing guidelines are advisory in nature. The District Court may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report. *See* FED. R. CRIM. P. 11(c)(3). If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B). If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## **OBJECTIONS**

Within ten (10) days after receipt of this report, any party may serve and file written objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by

9

reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

   **SIGNED this the 26th day of August, 2008.**

                _____
                KEITH F. GIBLIN
                UNITED STATES MAGISTRATE JUDGE